UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOE COBB, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PARAMOUNT GLOBAL, | ) | |
| CBS ENTERTAINMENT GROUP, and | ) | |
| BLACK ENTERTAINMENT | ) | |
| TELEVISION, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

Plaintiff, Joe Cobb (hereinafter, the "Plaintiff" or "Mr. Cobb"), through his undersigned counsel, hereby brings this Complaint for Damages against defendants Black Entertainment Television, LLC (hereinafter, "Defendant BET Networks"), Paramount Global (hereinafter, "Defendant Paramount"), and CBS Entertainment Group (hereinafter, "Defendant CBS Entertainment") (collectively, the "Defendants"). The foundation of Mr. Cobb's Complaint is as follows:

## BRIEF HISTORY OF THE SOUL TRAIN "SCREAM"

Introduced in 1970 on the prominent music program, "Soul Train," Mr. Cobb's iconic scream ("The Soooooul Train") has been recognized by millions of people across the globe for more than five decades. Hailing from Little Rock, Arkansas and having an intense passion for radio broadcasting, Mr. Cobb, who recently turned 80 years old, moved to Chicago in the 1960's where he became a radio legend with a 40-plus percentage market share performing the morning drive. It was in Chicago where he met Don Cornelius, as both men worked at Chicago's famous WVON radio. Mr. Cobb and Don Cornelius started a neighborhood road show to three different

1

high schools every Friday – which was conducted through a caravan of cars – referred to as the "Soul Train." This activity was the foundation of the "Soul Train" television program, which Don Cornelius created in 1970. The show went on to become the longest-running syndicated program in American television history – airing nationally from 1971 to 2006 – with Don Cornelius as the host. En route to that success, Don Cornelius and Mr. Cobb worked together to promote the program. During the creative process, Mr. Cobb, on multiple occasions, blurted out "The Soooooooul Train" as a joke. Don Cornelius fell in love with how Mr. Cobb's voice sounded while performing the scream, asked him to do it again, and the rest was history.

As a result of Don Cornelious' monumental decision to use Mr. Cobb's voice to help brand and introduce the budding music, dancing, fashion, and cultural icon to the world, the union, SAG-AFTRA, of which Mr. Cobb was already a member, paid Mr. Cobb additional revenue because of Soul Train's continuing increasing market exposure in the United States and abroad, including reruns. Mr. Cobb received royalty checks that were ultimately issued by Don Cornelius Productions. As the Soul Train franchise was set to be sold in or about 2007, SAG-AFTRA informed everyone affiliated with Soul Train that they would be receiving releases to sign, which would waive their rights to additional compensation. Mr. Cobb never received any such release. Mr. Cobb contacted SAG-AFTRA on numerous occasions after the Soul Train franchise was sold to Intermedia Partners-MadVision in or about 2008 to inquire into the status of his royalty payments, but he was told by the union that it had no file on him, and the union representatives claimed to be unaware of who Mr. Cobb was or his involvement with Soul Train. Later, the union claimed to discover a file on Mr. Cobb but stated that there was no information contained therein, which should have also included Mr. Cobb's broadcast history since he came to Chicago.

During the sale of the Soul Train franchise to Intermedia Partners-MadVision, Don Cornelius sold the rights to the Soul Train library, including its intellectual property, which included Mr. Cobb's prominent "Soul Train Scream." In 2012, Magic Johnson Enterprises, along with its business partners, acquired the rights to the Soul Train franchise. In 2016, Defendant BET Networks, which has been owned by Defendant Paramount since 2000, acquired the Soul Train franchise from the Magic Johnson-affiliated enterprises. During the time period of the acquisition, Defendant BET Networks touted that the Soul Train assets that it purchased included one of the largest libraries of Black music-oriented content in the world, including over 1,100 television episodes and 40 television specials. During these various business exchanges involving the Soul Train assets, Mr. Cobb, the originator of arguably the most highly recognizable facet of the program – the "scream" – has been ignored and deprived of his right to commercially benefit from the use of his famous voice.

As Soul Train reached overwhelming success worldwide over the years, Mr. Cobb's "golden pipes" became more recognized as the source of what became known as the famous "Soul Train scream," and thus his voice became the vital part of the powerful music and dance content which included several nationally televised award programs, a branded cruise experience, boxed DVD sets of the television series, syndicated reruns, an "American Soul" miniseries, ringtones on smartphones, and other products. In an interview that he gave only four months before he died, Don Cornelius described Mr. Cobb as *"the voice of Soul Train. . . ."*

This lawsuit seeks to vindicate Mr. Cobb's rights and to ensure that he is compensated for his valuable contributions to Black American and American popular culture.

## JURISDICTION AND VENUE

1.  On information and belief, the Plaintiff believes the amount owed to him exceeds $75,000.00 and thus his demand is greater than that amount. Because the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs, and this action is between citizens of different states, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Furthermore, pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district because the events giving rise to the claim occurred in this district.

2.  Plaintiff's claim under the Arkansas Publicity Rights Protection Act, A.C.A. § 4-75-1101 et seq., is brought pursuant to the Court's supplemental jurisdiction, 28 U.S.C. §1367.

3.  Defendant BET Networks is subject to personal jurisdiction in the State of Illinois because, on information and belief, the company conducts extensive business in the State of Illinois, including in this judicial district.

4.  Defendant Paramount is subject to personal jurisdiction in the State of Illinois because, on information and belief, the company conducts extensive business in the State of Illinois, including in this judicial district.

5.  Defendant CBS Entertainment is subject to personal jurisdiction in the State of Illinois because, on information and belief, the company conducts extensive business in the State of Illinois, including in this judicial district.

## THE PARTIES

6.  Plaintiff Joe Cobb is an individual who is presently a citizen of the State of Arkansas. Mr. Cobb became well-known as a radio personality in the City of Chicago and was a major force behind the establishment of the Soul Train franchise, which was founded in Chicago.

Mr. Cobb's iconic voice has served, and continues to serve, as the primary audial recognition of that classic Black American and American popular program.

7. Defendant BET Networks, on information and belief, is a subsidiary of Defendant Paramount under the unit of Defendant CBS Entertainment. On information and belief, Defendant BET Networks is a Delaware corporation with a principal place of business located at 1540 Broadway #26, New York, N.Y. 10036.

8. Defendant Paramount, on information and belief, is a Delaware corporation with a principal place of business located at One Astor Plaza (1515 Broadway), New York, N.Y. 10036.

9. Defendant CBS Entertainment, on information and belief, is a Delaware corporation with a principal place of business located at 51 W. 52nd St., New York, N.Y. 10019.

## BACKGROUND OF RELEVANT FACTS

10. In or about 1966, after Mr. Cobb joined WVON in Chicago, he became a member of SAG-AFTRA, the entertainment union. After Mr. Cobb joined the Soul Train franchise in 1971, he received additional pay because of Soul Train's continuing increasing market exposure in the United States and abroad, including reruns. Mr. Cobb received royalty checks that were ultimately issued by Don Cornelius Productions. As such, Mr. Cobb and Don Cornelius Production consummated an agreement through which Mr. Cobb received royalties for the use of his voice in the "Soul Train Scream." Those checks were issued by SAG-AFTRA.

11. As the Soul Train franchise was set to be sold in or about 2007, SAG-AFTRA informed everyone affiliated with Soul Train that they would be receiving releases to sign, which would waive their rights to additional compensation. Mr. Cobb never received any such release.

12. Mr. Cobb contacted SAG-AFTRA on numerous occasions after the Soul Train franchise was sold to Intermedia Partners-MadVision in or about 2008 to inquire into the status

of his royalty payments, but he was told by the union that it had no file on him, and the union representatives claimed to be unaware of who Mr. Cobb was or his involvement with Soul Train. Later, the union claimed to discover a file on Mr. Cobb but stated that there was no information contained therein, which should have also included Mr. Cobb's broadcast history since he came to Chicago.

13. As Mr. Cobb never signed a release in which he would have waived any and all rights to be compensated for the use of his voice, he continues to be entitled to receive compensation. Moreover, while Mr. Cobb discontinued his membership in SAG-AFTRA in or about 2008, he still remains entitled to receive compensation, although such compensation is not governed by SAG-AFTRA.

14. The debts and financial obligations owed to Mr. Cobb, which arose from the use of his voice in the "Soul Train Scream," remained after the Defendants acquired ownership of the Soul Train franchise, up to the present time.

15. Over the years, Mr. Cobb's voice has been used in association with the "Soul Train Scream" in at least the following productions:

- **Radio**:

    (1) The Soul Train Cruise Commercials that were saturating radio markets throughout the United States.

- **Television**:

    (1) Various Soul Train Music Award Shows, such as the "Best of Soul Train Awards";
    (2) The Best of Soul Train DVD Box Set commercials that were being offered by Time-Life, in which the "Soul Train Scream" is a major part of the DVDs offered within each box set offered for sale;
    (3) Soul Train rerun episodes and other Soul Train footage broadcasted on BET, Direct-TV, Bounce TV, Dish Network, Centric, Time Warner Cable, Verizon, and AT&T U-Verse;

(4) The Soul Train Tribute to Don Cornelius, produced by Nick Cannon, which aired on Centric;

- **Internet**:

    (1) Vintage Archive Soul Train episodes;
    (2) The Best of Soul Train DVD Box Set that is available for purchase on www.Amazon.com;
    (3) The Best of Soul Train DVD Box Set available for purchase through download from iTunes;
    (4) The "Soul Train Scream" as a ringtone;
    (5) The display of the "Soul Train Scream" through the Soul Train website and YouTube.

16. Mr. Cobb is confident that the "Soul Train Scream" is also available through various other vehicles of which he is presently unaware.

17. Mr. Cobb has not been paid any royalties for the use of his voice in the "Soul Train Scream" since approximately 2007.

18. As referenced above, Don Cornelius sold the rights to the Soul Train library, including its intellectual property, to Intermedia Partners-MadVision Entertainment in 2008.

19. In 2012, Magic Johnson Enterprises, along with its business partners, acquired the rights to the Soul Train franchise.

20. In 2016, Defendant BET Networks, which has been owned by Defendant Paramount since 2000, acquired the Soul Train franchise from the Magic Johnson-affiliated enterprises. During the time period of the acquisition, Defendant BET Networks touted that the Soul Train assets that it purchased included one of the largest libraries of Black music-oriented content in the world, including over 1,100 television episodes and 40 television specials.

21. On information and belief, Defendant BET Networks continues to be owned by Defendant Paramount, but presently such ownership is through Defendant CBS Entertainment.

22. On information and belief, when Defendant BET Networks acquired the Soul Train franchise from the Magic Johnson-affiliated enterprises, Defendant BET Networks assumed the debts and obligations owed by the Soul Train franchise, including the debts owed to Mr. Cobb for the unpaid royalties for the use of his voice in the "Soul Train Scream."

23. Moreover, on information and belief, Defendant BET Networks continues to receive financial benefits from the use of Mr. Cobb's voice in the "Soul Train Scream."

24. Further, on information and belief, as owners of BET Networks, Defendant Paramount and Defendant CBS Entertainment also continue to receive financial benefits from the use of Mr. Cobb's voice in the "Soul Train Scream."

25. In 2014, a representative of Defendant BET Networks wrote to Mr. Cobb "seeking permission to use your classic Soooooooul Train yell in our upcoming Best of Soul Train Awards (a retrospective show highlighting some of the best performances and iconic moments from the Soul Train Awards Shows) as well as the 2014 Soul Train Awards." (Ex. A.) The representative offered Mr. Cobb $1,000.00 ($500 per show) (Ex. A), which Mr. Cobb rejected.

26. Persistently since his royalty checks were discontinued in or about 2007, Mr. Cobb, either himself or through his legal representatives, has contacted the various owners of the Soul Train franchise to demand that he be compensated for the use of his voice in the "Soul Train Scream." Through various means and for various reasons, Mr. Cobb's efforts have been rebuffed every step of the way. Such communications have persisted through 2023, including between Mr. Cobb's present legal counsel and in-house legal counsel for Defendant Paramount. (Ex. B.) Accordingly, Mr. Cobb has taken extensive measures to keep this issue front and center in the purview of those owing him a debt, and, as such, has not slept on his rights in this regard.

# FIRST CLAIM FOR RELIEF
## (BREACH OF CONTRACT – AGAINST ALL DEFENDANTS)

27. Plaintiff repeats and incorporates paragraphs 1 through 26, as though fully set forth herein.

28. In or about 1966, after Mr. Cobb joined WVON in Chicago, he became a member of SAG-AFTRA, the entertainment union. After Mr. Cobb joined the Soul Train franchise in 1971, he received additional pay because of Soul Train's continuing increasing market exposure in the United States and abroad, including reruns. Mr. Cobb received royalty checks that were ultimately issued by Don Cornelius Productions. As such, Mr. Cobb and Don Cornelius Production consummated an agreement through which Mr. Cobb received royalties for the use of his voice in the "Soul Train Scream." Those checks were issued by SAG-AFTRA.

29. In 2016, Defendant BET Networks, which has been owned by Defendant Paramount since 2000, acquired the Soul Train franchise from the Magic Johnson-affiliated enterprises. On information and belief, as a part of the acquisition, Defendant BET Networks acquired the debts and obligations of the Soul Train franchise, including the debt and obligation arising from the contract to compensate Mr. Cobb for the use of his voice in the "Soul Train Scream." On information and belief, the "Soul Train Scream" has been presented on many occasions and through various media since Defendant BET acquired the Soul Train franchise. Defendant BET Networks has failed to perform its obligation to compensate Mr. Cobb for the use of his voice in the "Soul Train Scream," and to fulfill the debt owed to Mr. Cobb for past failures by the Soul Train franchise to compensate him for such uses. Therefore, Defendant BET Networks breached the contract it acquired between Mr. Cobb and the Soul Train franchise. Mr. Cobb has been damaged by said breach.

30. When Defendant BET Networks acquired the Soul Train franchise in 2016, Defendant Paramount, as the owner of Defendant BET Networks, on information and belief, also acquired the debts and obligations of the Soul Train franchise, including the debt and obligation arising from the contract to compensate Mr. Cobb for the use of his voice in the "Soul Train Scream." On information and belief, the "Soul Train Scream" has been presented on many occasions and through various media since Defendant Paramount acquired the debts and obligations of the Soul Train franchise. Defendant Paramount has failed to perform its obligation to compensate Mr. Cobb for the use of his voice in the "Soul Train Scream," and to fulfill the debt owed to Mr. Cobb for past failures by the Soul Train franchise to compensate him for such uses. Therefore, Defendant Paramount breached the contract it acquired between Mr. Cobb and the Soul Train franchise. Mr. Cobb has been damaged by said breach.

31. When Defendant BET Networks acquired the Soul Train franchise in 2016, Defendant CBS Entertainment, as an owner of Defendant BET Networks, on information and belief, also acquired the debts and obligations of the Soul Train franchise, including the debt and obligation arising from the contract to compensate Mr. Cobb for the use of his voice in the "Soul Train Scream." On information and belief, the "Soul Train Scream" has been presented on many occasions and through various media since Defendant CBS Entertainment acquired the debts and obligations of the Soul Train franchise. Defendant CBS Entertainment has failed to perform its obligation to compensate Mr. Cobb for the use of his voice in the "Soul Train Scream," and to fulfill the debt owed to Mr. Cobb for past failures by the Soul Train franchise to compensate him for such uses. Therefore, Defendant CBS Entertainment breached the contract it acquired between Mr. Cobb and the Soul Train franchise. Mr. Cobb has been damaged by said breach.

32. As a result of the breaches by the said Defendants, the Plaintiff has suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (VIOLATION OF THE ARKANSAS PUBLICITY RIGHTS PROTECTION ACT, A.C.A. § 4-75-1101 et seq. – AGAINST ALL DEFENDANTS)

33. Plaintiff repeats and incorporates paragraphs 1 through 32, as though fully set forth herein.

34. The Arkansas Publicity Rights Protection Act, A.C.A. § 4-75-1101 et seq. (the "Arkansas Act") protects the property rights of individual citizens of the State of Arkansas to the use of the individual's name, voice, signature, likeness, and other purposes. The Arkansas Act "Protect[s] the names, voices, signatures, photographs, and likenesses of the citizens of this state from exploitation and unauthorized commercial use without the consent of the citizen." *Id.* at § 4-75-1102(b)(1). This claim is brought by Plaintiff pursuant to the Court's supplemental jurisdiction, 28 U.S.C. §1367.

35. As a citizen of the State of Arkansas, Mr. Cobb has a property right in his voice as used in the "Soul Train Scream."

36. Since at least 2016, the Defendants have commercially exploited the voice of Mr. Cobb as used in the "Soul Train Scream" without Mr. Cobb's consent and without compensating the Plaintiff for such exploitation. Such unauthorized exploitation has damaged the Plaintiff in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### (CONVERSION – AGAINST ALL DEFENDANTS )

37. Plaintiff repeats and incorporates paragraphs 1 through 36, as though fully set forth herein.

38. Plaintiff is owed royalties by the Defendants for the use of his voice in the "Soul Train Scream."

39. The Defendants refuse to release said royalties to the Plaintiff, despite Plaintiff's having demanded to have the royalties released to him.

40. The Defendants' refusal to release the retained royalty payments to the Plaintiff has denied Plaintiff possession of those sums.

41. The Defendants' failure to release the retained portion of the royalty payment constitutes the tort of conversion of the money and has damaged Plaintiff in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (UNJUST ENRICHMENT – AGAINST ALL DEFENDANTS)

42. Plaintiff repeats and incorporates paragraphs 1 through 41, as though fully set forth herein.

43. On information and belief, the Defendants made unauthorized and improper deductions of the royalties due and owing to the Plaintiff, which said Defendants retained for their own account.

44. It would be inequitable and against good conscience to permit the Defendants to retain such unauthorized and improper deductions of Plaintiff's royalties, as the Defendants have been unjustly enriched, to Plaintiff's detriment.

45. On account of such unjust enrichment, the Plaintiff has been damaged in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### (AN ACCOUNTING – AGAINST ALL DEFENDANTS )

46. Plaintiff repeats and incorporates paragraphs 1 through 45, as though fully set forth herein.

47. As a result of Defendants' conduct described herein, Plaintiff has been monetarily damaged in an amount that cannot yet be fully determined.

48. Plaintiff therefore requires an accounting of all monies made and other benefits realized by, and any deductions, expenses and other costs claimed by, Defendants in connection with Defendants' collection of royalties on behalf of Plaintiff, in order to fully and accurately determine the extent of, and damages resulting from, Defendants' wrongful conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Joe Cobb prays for relief as follows:

1. That the Court declare that the Defendants have wrongfully withheld royalty payments from the Plaintiff over several years for the use of his voice in the "Soul Train Scream" in an amount to be determined at trial;

2. That the Court enter judgment in Plaintiff's favor against Defendants for breach of contract resulting in damages in an amount to be proven at trial;

3. That the Court enter judgment in Plaintiff's favor against Defendants for conversion resulting in damages in an amount to be proven at trial;

4. That the Court enter judgment in Plaintiff's favor against Defendants for unjust enrichment resulting in damages in an amount to be proven at trial;

5. That the Court order an accounting, requiring Defendants to account to Plaintiff for any and all monies received by Defendants related to the Plaintiff's royalty payments due and owing for the use of his voice in the "Soul Train Scream."

6. That the Court grant to the Plaintiff his reasonable attorneys' fees, costs, and interests due on any of the claims as alleged and proven at trial;

7. Such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff demands trial by jury of all issues so triable in this matter.

DATED this 12th day of January, 2024.

Respectfully submitted,

*/s/ Manotti L. Jenkins*

Manotti L. Jenkins (IL Bar No. 6276932)
LAW OFFICES OF MANOTTI L. JENKINS, LTD.
161 North Clark Street
Suite 1700
Chicago, Illinois 60601
Telephone: 312-208-9537
Fax: 872-228-8153

*Attorneys for the Plaintiff, Joe Cobb*